FILED
 2013 Mar-25  PM 03:30
U.S. DISTRICT COURT
    N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| TIMOTHY BRADFORD,              )<br>    Plaintiff,                 )<br>                                )<br>vs.                             )<br>                                )<br>CAROLYN W. COLVIN,              )<br>Commissioner of Social Security, )<br>    Defendant.                  ) | 5:11-CV-03437-LSC |

MEMORANDUM OF OPINION

I.    Introduction

The plaintiff, Timothy Bradford, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Mr. Bradford timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Bradford was forty-eight years old at the time of the Administrative Law Judge's ("ALJ's") decision, and has a high school education. (Tr. at 24, 44.) His past work experience includes employment as a construction worker.  (*Id.*)  Mr. Bradford claims that he became disabled on September 13, 2006, due to electrocution, a partial

collapsed lung, damaged nerve endings, and a damaged left knee. (Tr. at 18, 20-21, 23, 45.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id.* If they do not, a

determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Mr. Bradford meets the insured status requirements of the Social Security Act for a period of disability and DIB through June 30, 2010. (Tr. at 20.) He further determined that Mr. Bradford has not engaged in substantial gainful activity since September 13, 2006, the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's medical meniscus tear of the left knee is considered "severe" based on the requirements set forth in 20 C.F.R. 404.1520(c). (*Id.*) However, he found that this impairment neither meets nor medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. at 22.) The ALJ did find that the plaintiff's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, he did not find Mr. Bradford's statements concerning the intensity, persistence, and limiting effects of these symptoms to be credible to the extent they are inconsistent with the RFC assessment. (Tr. at 23.). After consideration of the entire record, the ALJ determined that the plaintiff has the following RFC:

> [T]o perform medium work as defined in 20 C.F.R. §§ 404.1567(c) except that he can lift/carry frequently 25 pounds and 50 pounds occasionally. He can stand and/or walk (with normal breaks) for a total of six hours in an eight hour workday and sit (with normal breaks) for a total of six hours in an eight hour workday. Pushing/pulling is unlimited other than as shown for lifting and carrying, but he cannot climb ladders/ropes/scaffolds. The claimant should avoid concentrated exposure to extreme cold, heat, humidity, fumes, odors, dusts, gases, poor ventilation, etc., and hazardous machinery and unprotected heights.

(Tr. at 22.)

According to the ALJ, Mr. Bradford is unable to perform any of his past relevant work, he is a "younger individual," and he has a "high school education," as those terms are defined by the regulations. (Tr. at 24.) The ALJ determined that the transferability of job skills was not material to his determination of disability because "using the Medical-Vocational Rules as a framework supports a finding that the

claimant is 'not disabled,' whether or not the claimant has transferable job skills." *See* S.S.R. 82-41, 20 C.F.R. Part 404, Subpart P, Appendix 2). (Tr. at 24.) After considering Mr. Bradford's age, education, work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the national economy that Mr. Bradford can perform such as hand packer. (Tr. at 24-25, 49.) The ALJ concluded his findings by stating that Plaintiff "has not been under a 'disability,' as defined in the Social Security Act, from September 13, 2006, through the date of this decision." (Tr. at 25.)

II. Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable

latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.    Discussion

Mr. Bradford alleges that the ALJ's decision should be reversed and remanded for two reasons. First, he believes that the ALJ erred in failing to find a period of disability of at least 12 months. (Doc. 8 at 5.) Second, Plaintiff contends that the ALJ improperly relegated his duty to derive a hypothetical residual functional capacity to the vocational expert. (Doc. 8 at 7.)

    A.    Substantial Evidence Supporting the Period of Disability

Plaintiff contends that the ALJ improperly determined that he was not disabled for a period of at least twelve months. (Doc. 8 at 5.) Plaintiff argues that his severe impairment, a medical meniscus tear of the left knee, is inconsistent with the ALJ's RFC for medium work. (*Id.*, Tr. at 20, 22.) The ALJ acknowledged the fact that testing revealed Plaintiff's medical meniscus tear of the left knee. (Tr. 20, 188.) However, the mere existence of an impairment does not speak to how the impairment interferes with Plaintiff's RFC to perform basic work-related activities. *See Moore v. Barnhart,* 405 F.3d 1208, 1212 (11th Cir. 2005) (the ALJ acknowledged that the plaintiff had an impairment, however the decision that the plaintiff retained sufficient RFC to perform some of her past relevant work was supported by other substantial evidence). Plaintiff claims that he satisfied the twelve month durational requirement to support a closed period of disability from October 24, 2006, when an MRI revealed a medical meniscus tear in the left knee, through April 1, 2008, the date Plaintiff underwent an arthroscopic partial medial meniscectomy. (Doc. 8 at 5, Tr. at 188.)

Plaintiff bears the burden of providing evidence that he was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. 423(d)(5)(A), 20 C.F.R. § 404.1512(a), 20 C.F.R. § 404.1512(c); *see also Jones v. Apfel,* 190 F.3d 1224, 1228 (11th Cir. 1999) (an individual claiming Social Security disability benefits must prove that she is disabled). However, it is the duty of the ALJ to determine the disabling nature

of Plaintiff's pain and the credibility of his testimony. *See Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984) (the ALJ determines the disabling nature of pain; credibility determinations are for the ALJ).

In this case, the ALJ found that Plaintiff's objectively determined medical conditions could reasonably be expected to cause the alleged symptoms, but did not find his statements concerning the intensity, persistence, and limiting effects of these symptoms to be totally credible to the extent they are inconsistent with the RFC assessment. (Tr. at 23.) The ALJ articulated explicit reasons for discrediting Plaintiff's subjective testimony, and substantial evidence supports his findings. The ALJ's decision reflects that he considered Plaintiff's condition as a whole, weighing all relevant evidence to reach his conclusion.

The majority of Plaintiff's testimony on his disability is based solely on physical impairments and limitations; however, the medical evidence covering Plaintiff's alleged period of disability, October 24, 2006, through April 1, 2008, provides no significant objective findings to support a disabling impairment. In fact, it appears that no physician of record during this time period assessed Plaintiff with any functional limitations or indicated that his impairments were disabling. (Tr. at 180-82, 184-90, 192-218, 220-28, 230-32, 234-48, 274-79, 280-88.)

Further, the frequency in which Plaintiff sought treatment is inconsistent with assertions of the frequency and severity of symptoms and the limitations he alleges. Plaintiff sought treatment for left knee pain and swelling on September 29, 2006. (Tr. at 180.) The physical examination was within normal limits, there was no injury or trauma noted, left knee x-rays were reported to be within normal limits, and Plaintiff was diagnosed with a sprained left knee. (Tr. at 180-81.) On October 24, 2006, an MRI revealed Plaintiff suffered from a medical meniscus tear. (Tr. at 20, 188.) Plaintiff skipped a follow-up appointment for further treatment on December 18, 2006, and did not seek additional treatment until four months later in February 2007. (Tr. at 236-37.) On February 20, 2007, treating physician Robert K. Allen, diagnosed Plaintiff with left knee injury and neck pain; however, no limitations to the plaintiff's activities were noted. (Tr. at 237.) Plaintiff did not seek any additional treatment until April 17, 2007. (Tr. at 238.) This evidence suggests that Plaintiff's condition did not require frequent treatment or emergency room visits, and that prescribed medications were controlling his symptoms.

From April 2007 through February 2008, Dr. Allen diagnosed the plaintiff with osteoarthritis of the knee, leg radiculopathy, and chronic pain, but documented no specific neurological abnormalities other than a limp and swelling. (Tr. at 238-44.) Throughout this entire period of treatment, Dr. Allen never opined that Plaintiff's

limitations were disabling, nor did he impose any functional limitations. (Tr. at 238-44.) On February 22, 2008, Dr. Allen referred Plaintiff to surgeon John Riehl for further evaluation. (Tr. at 244.)

Plaintiff was examined by Dr. Riehl on March 5, 2008, and the examination revealed no left knee effusion, erythema or warmth; Plaintiff's knee was stable to stress testing at full extension and 30 degrees flexion; and Plaintiff's knee was stable to anterior and posterior drawer testing (Tr. at 232). The examination revealed no tenderness and full active and passive range of motion. (*Id.*) Despite this positive diagnosis, Plaintiff underwent surgery, which the ALJ points to as suggesting that Plaintiff's symptoms were genuine. (Tr. at 23, 184-86, 231.) This would normally weigh in favor of the claimant, but it is offset by the fact that the record reflects that the surgery was successful in relieving any symptoms that existed. (Tr. at 23, 184-86, 230-31.) Plaintiff was released to return to activities as tolerated by Dr. Riehl five months after this surgery. (Tr. at 230-31, 246.)

Plaintiff contends that even if his treating surgeon, Dr. Riehl, released him to activities as tolerated, which is the equivalent of medical improvement, that there was still a period of nearly two years between October 24, 2006, and April 1, 2008, in which he could not have performed the full range of medium work. (Doc. 8 at 6.) However, there was no medical source which opined that Plaintiff could not tolerate or perform

medium work, imposed a greater degree of limitation than that found by the ALJ, or stated that the plaintiff was disabled. There was also no indication on record from any physician that Plaintiff's knee impairment resulted in any limitations that would seriously interfere with his ability to initiate, sustain, or complete activities. Additionally, while Plaintiff alleges disability beginning September 13, 2006, he did not file his disability claim until October 28, 2008, which undermines Plaintiff's allegations of a severe, debilitating impairment. (Tr. at 72-73, 82.)

Plaintiff also complained of a collapsed lung, shortness of breath, pain in his chest, and difficulty breathing. (Tr. at 86, 195-96, 213-18, 222-28.) The ALJ recognized that Plaintiff was diagnosed with chronic obstructive pulmonary disease (COPD), and does not dispute the fact that symptoms exist. (Tr. at 23.) However, as the ALJ noted, despite Plaintiff's complaints of difficulty breathing, shortness of breath, and chest pain, he continued to smoke against the advice of his doctors. (Tr. at 23, 193, 195, 197, 224.) This fact undermines Plaintiff's credibility regarding his allegations of these symptoms. *See Holley v. Chater,* 931 F. Supp. 840, 847–48 (S.D. Fla. 1996) ("the continued use of cigarettes by Plaintiff suggests that his pulmonary condition is not as severe as he alleges and further supports the ALJ's decision to accord plaintiff's subjective complaints diminished weight").

Finally, Plaintiff asserts that the ALJ did not discuss the treatment notes of Dr.

Robert Allen from August 2006 through February 2010. (Tr. at 235-47, 283-88.) However, other than raising the point that the ALJ did not discuss this in his findings, Plaintiff points to no additional evidence that supports his contention that he was disabled or limited beyond the ALJ's RFC assessment. (Doc. 8 at 7.) It is the burden of Plaintiff to produce evidence in support of his claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11 th Cir. 2003) (plaintiff bears the ultimate burden of proving disability). Despite the fact that the ALJ did not specifically mention Dr. Allen's treatment notes, the ALJ stated that he considered the entire record, which includes this information, when determining Plaintiff's RFC for a range of medium work. (Tr. at 18, 20, 22.)

Although Plaintiff complained of disabling pain and functional limitations, and presented evidence of an underlying medical condition, he failed to credibly establish that he was limited by the severity of his symptoms. Based on this fact, combined with the foregoing medical evidence of record, the ALJ properly found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of his symptoms were not totally credible. (Tr. at 23.) *See Moore,* 405 F.3d at 1213 (stating that the ALJ properly found Plaintiff's complaints of symptoms not credible based on evidence of exaggeration). As such, Plaintiff's claims are not consistent with the objective findings from the medical evidence, and the ALJ's conclusions are supported by substantial

evidence.

   B.   The Hypothetical Given to the Vocational Expert

Plaintiff asserts that the ALJ erroneously relegated his duty to derive a hypothetical RFC to Marsha H. Shulman, the vocational expert (the "VE") who testified at his hearing. (Doc. 8 at 8.) Specifically, Plaintiff contends that the ALJ did not properly pose a hypothetical question to the VE when determining Plaintiff's RFC. (*Id.*) Further, Plaintiff argues that the exhibits that the VE relied upon, 10F—the Psychiatric Review Technique (PRT)—and 11F—the physical RFC assessment—were both completed by a non-medical, state agency source, and therefore not entitled to any weight. (Doc. 8 at 8, Tr. at 252-273.)

First, in order to properly consider the hypothetical posed to the VE by the ALJ, the evidence relied upon must be determined as admissible. Plaintiff contends that the exhibits referenced by the VE, 10F and 11F, are not entitled to any deference or weight because they are from a non-medical source. (Doc. 8 at 8.) Contrary to Plaintiff's assertions, the ALJ is allowed to consider the determinations of other agencies when assessing disability. *See Falcon v. Heckler,* 732 F.2d 827, 831 (11th Cir. 1984) (the findings of another agency on disability, while not binding on the Commissioner, are entitled to great weight). In this case, exhibits 10F and 11F were completed by Katrina C. Paige-Hand, a Single Decision Maker (SDM) employed by State Disability

Determination Services (SDSS). As Plaintiff points out in his Memorandum in Support of Plaintiff's Argument, the ALJ acknowledged that the opinion of the SDM does not deserve as much weight as those of examining or treating physicians, but it does deserve some weight. (Doc. 8 at 8, Tr. at 23, 48-49.) There were no treating or examining source records that assessed any limitations or indicated that Plaintiff's impairment was disabling; therefore, the ALJ properly gave weight to the SDM's assessment as it was the only such evidence of record.

Additionally, in an attempt to expedite the processing of applications, SDM's have been rendering *initial decisions* in disability benefits cases. *See* 71 Fed. Reg. 45, 890 (Aug. 10, 2006); *see also* 20 C.F.R. § 404.906; *see also Langley v. Astrue,* 777 F. Supp. 2d 1250, 1260-61 (N.D. Ala. 2011) (discussing the use of the SDM model in Alabama and the SDM's ability to determine whether the conditions for entitlement to benefits are met). While the responsibility for assessing Plaintiff's RFC falls on the ALJ at the hearing level, it is appropriate that the opinion of the SDM was given weight. (*Id.*) Accordingly, the ALJ was proper in using these exhibits when posing a hypothetical question to the VE. (Tr. at 48-50.)

Second, in order for the testimony of the VE "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson,* 284 F.3d at 1227. Plaintiff asserts that the

hypothetical question the ALJ posed to the VE did not amount to a complete hypothetical, and the ALJ improperly abdicated his responsibility for deriving Plaintiff's RFC to the VE. (Doc. 8 at 7-8.)

Contrary to Plaintiff's argument, the record shows that the ALJ asked the VE to consider Plaintiff's vocational profile, past relevant work history, the exhibits, and state whether an individual with a medium RFC could perform Plaintiff's past relevant heavy, semi-skilled work. (Tr. at 48-49.) The VE responded that based on the vocational profile, exhibits 10F and 11F, and the limitations reported, Plaintiff could not perform his past relevant work. (Tr. at 48-49, 252-273.) The ALJ also asked the VE if there were jobs available for someone with Plaintiff's vocational profile. (Tr. at 49.) The VE stated that there were and listed several medium RFC occupations that Plaintiff could perform. (Tr. at 49.) The ALJ finally asked the VE if there was any work the plaintiff could perform if his complete testimony was assumed credible. (Tr. at 49-50.) The VE responded that there would be no jobs that Plaintiff could perform based on the impairments described in his complete testimony. (Tr. at 50.) The information referenced by the ALJ for consideration by the VE clearly includes all the impairments complained of by Plaintiff, forming a complete hypothetical question; therefore, the VE's testimony can be considered substantial evidence supporting the ALJ's decision. *See Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1181 (11th Cir. 2011) (a

VE's testimony in response to a hypothetical including all of the plaintiff's impairments constitutes substantial evidence). *See also Moore v. Astrue,* 256 F. App'x 330, 333 (11th Cir. 2007) (it is not error for the ALJ to rely on the testimony of the VE because the ALJ should consult a VE when claimant is not capable of performing the full range of work classification).

Finally, while the ALJ did give weight to the SDM's opinion, and referenced it in his hypothetical to the VE, he specifically found that "the evidence" as a whole suggested that Plaintiff could perform medium work. (Tr. at 24.) It is clear that the ALJ gave weight to the SDM's opinion because there was no other evidence of record that assessed Plaintiff's limitations and stated impairments. The SDM's opinion supports a finding of "not disabled," as does the objective medical evidence. The ALJ fully discussed the evidence in the record as a whole, and as such determined that it supports his conclusions, including his RFC assessment of Plaintiff. (Tr. at 20-24.) Consequently, if an error was committed by the ALJ when relying on the SDM's opinion, this error is harmless based on the other substantial evidence available in the record. *See Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."). Based on the ALJ's discussion of all evidence in the record, it is certain that

a different decision would not result from a remand in this case.

IV.   Conclusion

Upon review of the administrative record, and considering all of Mr. Bradford's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this <u>25th</u> day of <u>March 2013</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

171032